[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11971
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-00056-MP-CAS

HENRY S. CHAMBERS, JR.,

                                        Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(December 1, 2016)

Before TJOFLAT, MARCUS and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

Henry Chambers, Jr. appeals the district court's order affirming the

Commissioner's denial of his application for disability insurance benefits, pursuant

to 42 U.S.C. § 405(g).   On appeal, Chambers argues that: (1) the Administrative Law Judge ("ALJ") erred by assigning little weight to the opinion of a consultative psychologist; and (2) the ALJ erred by relying on the vocational expert's testimony and recommendations for occupations.  After careful review, we affirm.

We normally review the Commissioner's decision for substantial evidence. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).  We do not address the magistrate judge's or district court's reasoning, because our review is limited to the agency decision.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).  The ALJ is charged with weighing the evidence and we may not reweigh the evidence or substitute our own judgment for that of the Commissioner even if we find the evidence preponderates against the Commissioner's decision.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).

First, we are unpersuaded by Chambers's claim that the ALJ erred by assigning insufficient weight to the opinion of a consultative psychologist.  In assessing whether a claimant is disabled, an ALJ must consider the medical opinions in a case record together with the rest of the relevant evidence received. 20 C.F.R. § 404.1527(b).  Generally, the longer a treating source has treated a claimant and the more times a treating source has seen a claimant, the more weight the ALJ will give to the source's medical opinion.  Id. § 404.1527(c)(2).  We've

2

held that a one-time examiner need not be given deference by the Commissioner. McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Furthermore, the more consistent an opinion is with the record as a whole, the more weight the ALJ will give to that opinion. 20 C.F.R. § 404.1527(c)(4). The ALJ will consider a claimant's daily activities when determining the symptoms and severity of an impairment. Id. § 404.1529(c)(3)(i). An ALJ need not give a treating physician's opinion considerable weight if the applicant's own testimony about his daily activities contradicts that opinion. See Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995). However, the ALJ must "articulate specific reasons for questioning the claimant's credibility" if subjective symptom testimony is "critical" to the claim. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

Here, the ALJ did not err by assigning little weight to the opinion of a consultative psychologist, Dr. William Beaty. First, the ALJ properly reviewed all medical opinions in the case record, including those of the nurse practitioners, physician assistants, and other medical personnel, to determine the severity of Chambers's impairments and how they affected his ability to work. See 20 C.F.R. § 404.1527(b), (c); § 404.1513(a), (d)(1). The ALJ was permitted to attach more

3

weight to the medical professionals at Meridian Behavioral Healthcare, Inc. ("Meridian"), who treated Chambers numerous times and over a longer period of time, than to Dr. Beaty, who examined Chambers once. See 20 C.F.R. § 404.1527(c)(2); McSwain, 814 F.2d at 619.

Second, the consultative psychologist's assessment was based primarily on Chambers's report of subjective symptoms, which the ALJ determined was not reliable. The ALJ explained that he questioned Chambers's credibility because Chambers's description of his daily activities and capacity for social functioning suggested a greater capacity than that alleged during his hearing testimony, and Chambers's work history and refusal to look for new work raised a question as to whether Chambers's continued unemployment was actually due to medical impairments. See Marbury, 957 F.2d at 839. Chambers had testified that he had left his last job because he wanted to and that he had not looked for a job since. He also testified that he was able to perform household chores, such as doing yard work, preparing simple meals, washing dishes, vacuuming, sweeping, mopping, making his bed, and taking out the trash, and that he went to church once a week and used public transportation. Notes from follow up meetings at Meridian indicated that Chambers had a good response to his medication and his symptoms were well controlled with medication. And, when asked by a treating counselor about his disability, Chambers made vague comments about his back and mental

condition and refused to search for jobs, even after being told that there were jobs that were not labor intensive and that his depression had been under control for some time with the help of medication. Therefore, the ALJ's credibility determination was clearly articulated and based on substantial evidence. See Foote, 67 F.3d at 1562.

The ALJ also determined that Dr. Beaty's opinion was inconsistent with the record as a whole. In particular, as we've described above, his opinion was inconsistent with the opinions of Chambers's treatment providers at Meridian and Chambers's own statements that he was able to use the bus and perform a good range of daily activities. See 20 C.F.R. § 404.1527(c)(4). The ALJ was permitted to consider these daily activities when determining the symptoms and severity of Chambers's impairment. Further, because Chambers's own testimony regarding his daily activities contradicted Beaty's opinion, the ALJ did not need to give Beaty's opinion considerable weight. See 20 C.F.R. § 404.1529(c)(3)(i); Phillips, 357 F.3d at 1241. For all of these reasons, the ALJ did not err by assigning little weight to Beaty's opinion.

We also find no merit to Chambers's claim that the ALJ erred by relying on the vocational expert's testimony and recommendations for occupations. If the Commissioner determines that the claimant cannot perform his past work, the Commissioner must establish substantial evidence that occupations exist in the

national economy that the claimant can perform. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). For a response to a hypothetical question to constitute substantial evidence of work available to the claimant, the question must set out all of the claimant's impairments. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). If the Commissioner establishes that the claimant could perform work in the national economy in light of the claimant's RFC, age, education and work experience, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale, 831 F.2d at 1011.

Job descriptions in the DOT include specific vocational preparation time ("SVP") numbers and reasoning levels, which supply supplemental information about the listed jobs. Dictionary of Occupational Titles, Occupational Definitions (4th ed., rev. 1991) ("DOT"). A job with an SVP of two means that that job requires anything beyond a short demonstration up to and including one month of time to learn the techniques, acquire the information, and develop the facility needed for average performance in the job. See DOT, Appendix C: Components of the Definition Trailer, § II, SVP. Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually within 30 days. 20 C.F.R. § 404.1568(a). The job of hospital food worker has a reasoning level of three and a SVP of two. DOT § 319.677-014. The job of housekeeping cleaner has a reasoning level of one and a SVP of two. Id. §

6

323.687-014. If there is a conflict between the DOT and the jobs identified by a vocational expert in response to the hypothetical question, the testimony of the vocational expert outweighs the DOT because the DOT is not the sole source of admissible information concerning jobs. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999).

Here, the ALJ established substantial evidence that occupations existed in the national economy that Chambers could perform by asking the vocational expert a hypothetical question that set out all of Chambers's impairments. See Hale, 831 F.2d at 1011; Wilson, 284 F.3d at 1227. At the hearing, the ALJ told the vocational expert to assume, among other limitations, that Chambers needed a low stress work environment with no production line; simple tasks; and to have limited contact with the public and co-workers. The ALJ asked the vocational expert whether any jobs existed in the national economy that a hypothetical person could perform assuming Chamber's age, education, work experience, RFC, and other limitations. The vocational expert testified that such an individual could perform unskilled, light jobs, such as a hospital food worker and housekeeping cleaner.

Instead of arguing that the ALJ erred by failing to inform the vocational expert of his impairments, Chambers seems to argue that the suggested occupations do not account for the limitations required to accommodate his impairments, specifically simple work and a low stress work environment. As for

7

simple work, Chambers argues that jobs with reasoning levels of two or three require more mental capacity than that which would be required for simple work. But the job of housekeeping cleaner has a reasoning level of one. DOT § 323.687-014. As for jobs labeled with reasoning levels of two or three, they may also be jobs with simple tasks. Furthermore, although the job of hospital food worker has a reasoning level of three, it also has a SVP of two, indicating that it requires, at a maximum, one month of time to learn the techniques, acquire the information, and develop the facility needed for average performance in the job. DOT § 319.677-014. That job is, therefore, consistent with unskilled work, which needs little or no judgment to do simple duties that can be learned on the job in a short period of time, usually within 30 days. 20 C.F.R. § 404.1568(a). Thus, Chambers has not shown that the jobs of housekeeping cleaner or hospital food worker require more mental capacity than allowed for in the limitations outlined by the ALJ.

As for the requirement of a low stress environment, Chambers has not presented any evidence that the occupations of hospital food service worker and housekeeping cleaner did not satisfy this requirement. The definitions of the occupations do not mention stress and the vocational expert did not mention stress. See generally DOT, Occupational Definitions (4th ed., rev. 1991). For these reasons, Chambers has not proven that he could not perform the work suggested by the Commissioner. See Hale, 831 F.2d at 1011.

8

Lastly, Chambers's argument that the ALJ should have questioned the vocational expert about any inconsistency with the DOT fails.  First, there was no apparent inconsistency -- indeed, Chambers did not question the vocational expert about any inconsistency or raise the issue before the ALJ, and the vocational expert affirmed that his testimony was consistent with the DOT.  Second, even if there was a conflict between the DOT and the jobs identified by the vocational expert in response to the hypothetical question, the testimony of the vocational expert outweighs the DOT because the DOT is not the sole source of admissible information concerning jobs.  See Jones, 190 F.3d at 1230.  Thus, the ALJ properly relied on the vocational expert's testimony.

**AFFIRMED**.